## Case No. 12,593.

SEAVER et al. v. The CARRONI..

[40 Hunt, Mer. Mag. 319.]

District Court, S. D. New York. Nov. 20, 1858.

ADMIRALTY DECREES—VACATING—LACHES OF SHIP-OWNER.

[1. Delay by a shipowner, having full knowledge of proceedings against her by brokers, who had agreed to act as ship's husbands, to recover advances and disbursements made by them upon the security of a voyage which was abandoned because the ship was found unseaworthy, *held* to be such laches as would prevent the owner from seeking to annul the decree and the sale had under it, where he interposed no claim, and did not appear in the suit until his motion to vacate the decree was made, some 10 days after the sale of the vessel, and after all the proceedings were perfected.]

[2. Where fraud of the libelants was alleged as the ground of vacating the decree, *held*, that, under the .circumstances, the proper method of obtaining relief would be a separate suit to reclaim the vessel from the hands of the purchasers, and there impeach the title of the latter by affirmative proofs of their fraud in procuring the decree.]

[3. It is, prima facie, no impeachment of a decree of sale of a vessel that the persons who prosecuted the libel purchased the claim on which it was brought pending the suit, and continued the action as assignees of the original libelants.]

In June or July last, Emory H. Penniman, then the owner of the brig Carroni, being in this port, applied to the firm of Tappan & Starbuck of this city, to act for him as brokers or ship's husbands of the vessel in making a voyage to Aspinwall with a cargo of coal, representing the vessel to be seaworthy and in good repair, and obtained from them an advance of $500 cash, upon the arrangement that her freight bills should be assigned them for their security, and that they should further make the necessary expenditures for her outfit and dispatch on the voyage. The brig was sent by them to take a loading of anthracite coal, on the North river, near Rondout, and early in July arrived in New York with such cargo on board; when her owner duly assigned the bill of lading therefor to his said brokers and agents, and under their directions the libelants [Zachariah Seaver and others] shipped a crew for the vessel and voyage, and advanced the moneys necessary for that purpose. On or about the same day her owner left the city of New York to visit his family in Connecticut. The vessel, on inspection, after her return to the city with her lading of coal. was discovered to be unseaworthy, and, under the directions of her master, the agents, or ship's husbands, had her taken to a proper berth and the coal discharged from her, for the.purpose of necessary repairs. On examination, she was found, however, so decrepit and unsound that the ·said agents declined to make further advances, and, the owner not supplying means for her refitment, the voyage was abandoned. The libelant having shipped her crew for the voyage, and made the advances necessary to that end, and the owner not repaying these expenditures, he arrested

the vessel in this court to recover these charges. Tappan & Starbuck, the ship's husbands, declined to make further advances to Penniman upon the security of the bill of lading, or the vessel, or his own responsibility, although repeatedly importuned by him to do so, and not obtaining repayment of what they had already advanced, had taken out an attachment in a state court against the vessel to enforce their demand against her. The libelant in the meantime pressing his suit to a decree, they paid off his demand in full, and took an assignment of it to themselves, and, relinquishing their attachment under the local law, prosecuted that suit to a final judgment, took out execution thereon, and caused the vessel to be sold at auction under that decree and process. Being themselves the highest bidders at the execution sale, the vessel was struck off and conveyed to them by the marshal, and they now hold and claim her as their own property, having offered, however, to release and convey her to Penniman, her former owner, on the satisfaction of their advances in her behalf. Penniman now applies to the court for an order to set aside the decree of sale entered in this cause, and all proceedings under the same, and to allow Penniman to file a claim in this cause, and appear and defend the same, or for such other or further order in the premises as the court may see fit to grant.

BY THE COURT. The grounds upon which the application is founded are: That the payment by Tappan & Starbuck of the demands of the libelants was an extinguishment of that debt, and the assignment to them of the claim was unavailing to keep the action alive; that they were agents of Penniman, under obligations to him to discharge the debt, and their attempt to acquire its lien to themselves was a fraud upon him, and voided the act so far as respects its interests. I think neither position is established upon the papers before me. The bearing of the evidence plainly is that Tappan & Starbuck were to act for Penniman only under the security of the bill of lading for the voyage, and were under no contract to make advances to him or for the ship upon his personal responsibility. They were his brokers, to collect and receive freights earned by the ship on the voyage proposed, and to disburse them as ship's husbands and in their own remuneration for such agency; and that the voyage fell through because of the insufficiency of the vessel for the service she was to perform,—her seaworthiness being the essential condition of the undertaking on their part.

But, independent of all questions upon the merits of the case, the method of relief sought for by this motion must be denied, because of the laches of Penniman in not intervening in the cause, and making his appeal to the court while the suit was in prosecution. The libel was filed July 12, 1858, the interlocutory decree was taken September 7th, the report of the commissioner filed Sep-

tember 14th, and the final decree perfected September 16th, ordering a venditioni exponas issued, returnable the first Tuesday in October thereafter, under which a sale of the vessel was duly made by the marshal, and the execution filed in court on the 18th of September. During that period Penniman was frequently in the city urging application to Tappan & Starbuck and others for loans of money on the security of the vessel, and otherwise to relieve his indebtedness. The notice of this application is dated the 29th of September, after all the proceedings had been perfected, and, in effect, in the direct presence of Penniman, or, certainly, so that, with the slightest diligence, he could, if he did not, in point of fact, know, the position of the case, and every step taken in it, from its inception to its close, and the final sale and delivery of the vessel by the marshal to the purchasers. This state of facts takes from him all equity to set the proceedings aside and require the libelants to prosecute their action anew, especially as no deceit or irregularity in the carrying of the suit is made out against them.

The affidavit of Penniman, imputing fraud in fact to Tappan & Starbuck, in the transaction with which they were connected, is repelled by the affidavits in reply thereto on their part, in so far, at least, that the court cannot rightfully, in that state of the proofs, annul the judgment and sale in the cause, and put the libelants to renew the action. Moreover, it is wholly unnecessary to interfere with that suit by any summary order impeaching its validity, if the allegations of the party making the application for that relief are well founded; because, if the proceedings against the vessel are founded in fraud, they can interpose no impediment to an action by Penniman to reclaim her out of the hands of her purchasers. The onus should be imposed upon him to proceed affirmatively, and show his title to the property, and that the judicial sale was unauthorized and nugatory. This result cannot be obtained by summary motion, and there is no legal reason why he should not assume this burden in the first instance, without invoking the court to cast upon the purchasers of the vessel the necessity of vindicating their title under the judgment, when he, by his negligence or acquiescence, allowed it to be taken in due course of procedure against the vessel.

I consider it, prima facie, no impeachment of the validity of the judgment, or the purchase under it, that Tappan & Starbuck were owners of the debt by assignment when the decree was obtained. They took, as assignees, all the interest in the debt, and power to continue the action, possessed by the original suitors. I accordingly deny the motion to disturb the judgment or sale in this cause, as upon the claim of Penniman he has ample remedy to repossess himself of the vessel, if she has been acquired by any fraudulent

practices of her purchasers, either in the action against her or her sale.

Ordered that the motion made in behalf of Emory H. Penniman to vacate the final decree in the above cause, and the sale of the vessel under execution thereupon, be denied, with costs.